**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-00124 (ACR)** |
| **v.** | : | **Case No. 23-cr-00140 (ACR)** |
| | : | **Case No. 23-cr-00144 (ACR)** |
| **MICHAH COOMER,** | : | |
| **DODGE DALE HELLONEN, and** | : | |
| **JOSHUA ABATE,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matters. For the reasons set forth herein, the government requests that this Court sentence Defendant Michah Coomer to 30 days' incarceration, 60 hours of community service, and $500 in restitution, and Defendants Joshua Abate and Dodge Dale Hellonen to 21 day's incarceration, 60 hours of community service, and $500 in restitution.

## I. Introduction

On January 6, 2021, Coomer, age 21, Hellonen, age 21, and Abate, age 22 ("Defendants") were active-duty Marines. In violation of their Marine oaths to protect the United States Constitution against all enemies, foreign and domestic, all three jointly participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The

Each of the Defendants pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of incarceration is appropriate in this case because all: (1) were active-duty United States Marines when they unlawfully breached the United States Capitol on January 6; (2) entered the Capitol at the Senate Wing Door, the initial breach point on January 6, minutes after that door was initially breached, amid signs of the violent breach that were still fresh and obvious; (3) remained inside the Capitol for a long time, approximately 52 minutes; (4) joined with other rioters in provocative chants which further riled up the mob and was a rallying cry to continue the riot;  (5) were inside the Rotunda when other rioters engaged in aggressive physical skirmishes with police; and (6) although admitting their unlawful conduct on January 6, have yet to genuinely express sincere remorse for that conduct.  Additionally, Coomer publicly expressed pride in his involvement in the riot, bragging on social media after January 6 that he was "[g]lad to be apart [sic] of history," and exhorted others to violence, stating that it was necessary to have a "fresh start" and he was "waiting for the boogaloo," which he explained was "Civil war 2".

The Court must also consider that Defendants' conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings.  *See United States v. Thomas Fee*, 1:21-cr-00131 (JDB), Tr. 04/01/2022 at 17 ("The defendant was an active participant in a mob assault on our core democratic values and our cherished institution.  And that assault was intended by many and by the mob at large in

Metropolitan Police Department (MPD) also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

general to interfere with an important democratic processes of this country. I cannot ignore that, cannot pull this misdemeanor out of that context.") (statement of Judge Bates). Their actions and those of their fellow rioters enabled the breach of the Capitol, threatened the lives of the police officers, legislators and their staffs, and disrupted the certification vote for several hours. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers.  The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, the facts and circumstances of their crimes support a sentence of 30 days of incarceration for Coomer and 21 days of incarceration for Abate and Hellonen, with 60 hours of community service and $500 in restitution for all three Defendants.

## II.     Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol.  *See* ECF 35 (Statement of Offense), at 1-7 (Coomer), ECF 32 (Statement of Offense), at 1-7 (Abate), ECF[2] (Statement of Offense), at 1-7 (Hellonen).  As this Court knows, a riot cannot occur without rioters, and each rioter's actions—from the most mundane to the most violent— contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to their conduct and behavior on January 6.

### *Defendants' Roles in the January 6, 2021 Attack on the Capitol*

On the morning of January 6, 2021, Defendants traveled together by car from a military post in Virginia to Washington, D.C.  There, they went to the "Stop the Steal" rally at the Ellipse. After the rally, Defendants joined a large mob that walked towards the U.S. Capitol building.

---

[2] At the time of this filing, the Statement of Offense and other plea documents for Hellonen had not been uploaded onto the Electronic Case Filing System.

Coomer wore a red baseball cap, a black Under Armour sweatshirt with neon outline, and a green puff jacket (circled in red in the below images).  Abate wore a baseball cap with a rectangular design on the front, with a plaid jacket and jeans (circled in green).  Hellonen wore a dark colored jacket, dark colored pants, and carried a yellow "Don't Tread on Me" flag (circled in blue).



*Image 1: Coomer (red), Hellonen (blue), and Abate (green) inside the U.S. Capitol on Jan. 6*

Defendants entered the U.S. Capitol Building through the Senate Wing Door at approximately 2:20 p.m., only seven minutes after rioters had first breached the Capitol at that location by smashing windows adjacent to that door.  As such, they almost certainly heard blaring alarms triggered by the violent breach, stepped over broken glass on the floor, and saw overturned furniture.  Nevertheless, they proceeded further inside the Capitol Building, where their movements were captured by CCTV.



*Image 2: Defendants entered the U.S. Capitol through the Senate Wing Door*

Defendants then walked to the Rotunda and entered through the South entrance, where they remained for a couple minutes.  While inside, they placed a red MAGA hat on one of the statues and took photos with it.



*Image 3: Defendants in the Rotunda*



*Image 4: Abate placing a red MAGA hat on a statute in the Rotunda*

Defendants then went to the Statuary Hall, before returning to the Rotunda.  The group remained inside the Rotunda for approximately 30 minutes until police arrived and formed a line to direct people out of the U.S. Capitol Building.



*Exhibit 5: Defendants after they re-entered the Rotunda a second time*

6

At approximately 3:12 p.m., Defendants exited the U.S. Capitol Building through the Rotunda Door, having been inside for approximately 52 minutes.



*Image 6: Exiting the U.S. Capitol through the Rotunda door*

*Social Media Posts*

Following the events on January 6, 2021, Coomer expressed no remorse on social media for his part in the riot.  To the contrary, he posted on Instagram a collection of photographs he took during the riot with the caption "Glad to be apart [sic] of history".



*Image 7: Coomer's Social Media Post*

Additionally, he sent a Facebook direct message on January 31, 2021, stating his belief "that everything in this country is corrupt. We honestly need a fresh restart. I'm waiting for the boogaloo." When asked, "What's a boogaloo," Coomer responded, "Civil war 2."



*Image 8: Coomer's Facebook Direct Message*

*Defendants' Post Arrest Interviews*

All Defendants have interviewed with the Government.  They admitted to traveling to Washington D.C together with the intent to attend rallies there.  They admitted to entering and remaining in the U.S. Capitol Building.  They also admitted they chanted along with other rioters, including chanting "Stop the Steal" and "Four More Years."  Coomer also admitted to making the social media posts but downplayed their meaning.

*The Charges and Plea Agreements*

On January 17, 2023, the United States charged Defendants by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G).  On January 18, 2023, law enforcement officers arrested Coomer at the NCIS office in Oceanside, California, Abate at his residence in Fort Meade, Maryland, and Hellonen at his residence in Jacksonville, North Carolina.

On April 14, 2023, the United States charged Coomer in a one-count Information with violating 40 U.S.C. § 5104(e)(2)(G), parading, demonstrating, or picketing in any of the Capitol Buildings.  On April 18, 2023, pursuant to a plea agreement, Coomer pleaded guilty to the Information.

On April 26, 2023, the United States charged Hellonen in a one-count Information with violating § 5104(e)(2)(G).  On June 12, 2023, pursuant to a plea agreement, Hellonen pleaded guilty the Information.

On June 12, 2023, pursuant to a plea agreement, Abate pleaded guilty to an Information, charging him with a violation of § 5104(e)(2)(G).

In their plea agreements, all Defendants agreed to pay $500 in restitution to the Architect of the Capitol.

### III.     Statutory Penalties

Defendants now face sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Defendants face up to six months of imprisonment and a fine of up to $5,000.  All must also pay restitution under the terms of their plea agreements.  *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).  As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence.  Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6).  In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days of incarceration for Coomer and 21 days of incarceration for Abate and Hellonen, with 60 hours of community service and $500 in restitution for each defendant.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).  The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters."  *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021).   While assessing their

participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for misdemeanor defendants like Coomer, Abate, and Hellonen the absence of violent or destructive acts is not a mitigating factor. Had they engaged in such conduct, they would have faced additional criminal charges.

During their almost hour-long trespass inside the U.S. Capitol, Defendants observed the damage and violence occurring inside and outside the Capitol building. Instead of avoiding the chaos, they participated and encouraged the rioting by remaining inside the building and chanting along with the other rioters "Stop the Steal" and "Four More Years." Although all have admitted their unlawful conduct on January 6 and pleaded guilty, none, to date, has genuinely expressed sincere remorse for their conduct. Indeed, after January 6, Coomer expressed pride in taking part in the riot, stating he eagerly anticipated "a boogaloo" or "Civil war 2". The nature and the circumstances of this offense, and their eager anticipation of future violence, establish the clear need for a sentence of incarceration in this matter.

### B. The Defendants' History and Characteristics

On January 6, Defendants were all active-duty members of the United States Marine Corps. *Semper Fidelis ("always faithful"),* the motto of the Marine Corps, expresses its steadfast loyalty to the United States and a commitment to its collective progress. Defendants violated their oaths to join a riotous mob when their preferred presidential candidate did not win an election. While Defendants' military service is laudable, it renders their conduct on January 6 all the more troubling. As active military members, they were well aware that individuals do not have the right to enter restricted government buildings. Furthermore, Coomer's post-January 6 statement that he was hoping for a second civil war to topple what he viewed as a "corrupt" government was deeply ominous given that his military training and access to military weapons would make him a particularly effective participant in such a war against the government.

11

As noted in the PSRs, Defendants Coomer and Hellonen may face separation from the Marine Corps, and this separation may be the result of their behavior on January 6, 2021.  As of the date of this filing, it is the Government's understanding that Abate is still enlisted. *See* PSR ¶ 49; Coomer's separation with the Marine Corps is pending a decision to be rendered on Sept. 9, 2023.  *See* Coomer PSR ¶ 49.  Hellonen received separation paperwork on July 25, 2023.   *See* Hellonen PSR ¶ 51.  As a result of their convictions in this case, Defendants may be subject to separation from the Marines on less than honorable conditions.

In fashioning an appropriate sentencing recommendation, the government has taken these facts into account.  This possible consequence of the Defendant's actions was entirely foreseeable and should have impacted their decisions before they embarked on their journey up the stairs to the besieged Capitol building.  Moreover, this is an employment decision that is up to the Marine Corps to determine and implement.  Many criminal defendants endure collateral consequences for their behavior and for their convictions—indeed, most criminal defendants likely suffer employment consequences of some kind.  While this Court may consider these facts along with all the other characteristics of the Defendants, the possible loss of their privilege to serve as Marines does not absolve their criminal liability and should not be seen as a free pass for their criminal behavior.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law.  As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the

12

presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant.  18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred."  (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence.  *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur.  And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again.").  This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th

as the exercise of First Amendment rights.") (statement of Judge Moss).  And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences.  There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

All Defendants need to understand that their actions on January 6 and any similar actions in the future cannot be tolerated.  Coomer's comments weeks later after witnessing and participating in the events of January 6, 2021, especially his implicit call for a "boogaloo" or "Civil War 2," shows he in particular needs a stronger dose of specific deterrence than his codefendants. For that reason, the government seeks a longer term of incarceration for him than for them.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3]  This Court must sentence the defendants based on their own conduct and relevant characteristics but should give substantial weight to the context of their unlawful conduct: their participation in the January 6 riot.

All three Defendants have pleaded guilty to Count One of the Information, charging them with parading, demonstrating, or picketing in any of the Capitol Buildings, in violation of 40 U.S.C.  § 5104(e)(2)(G).  This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES."  The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in

the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity.  But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records.  After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).  "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity.  Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years.  For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences.  The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom.  *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr.  at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense.  And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

Although, distressingly, a number of January 6 defendants were *former* members of the armed services or *former* law enforcement officials on that day, very few were so employed on

January 6. One of those was Tam Pham, an active-duty Houston, Texas police officer when he breached the Capitol on January 6.  As he approached the Capitol past knocked-down fences, Pham saw rioters trying to incite the police violence; entered the Capitol through the Upper West Terrace door while shouting, "we're taking the house back"; spent approximately 20 minutes roaming throughout the Capitol building, including into a hallway off which there were Congressional offices; minimized his January 6 conduct when interviewed by FBI agents; and deleted photographs showing events on January 6 from his mobile telephone. Like the Defendants here, Pham pleaded guilty to violating 40 U.S.C. § 5014(e)(2)(G).  *United States v. Pham*, 1:21-cr-00109 (TJK).  Judge Kelly sentenced Pham to 45 days of incarceration with no supervisory term.

In *United States v. Trennis Evans*, 21-CR-00225 (DLF), the defendant, a former West Virginia state legislator, livestreamed the mob on the East Side of the Capitol building for over an hour to his public Facebook page.  While livestreaming, Evans carefully narrated what was going on and expressed his enthusiasm for what was happening, cheering that "the revolution has started!"  He later deleted his Facebook livestream video shortly after posting it.  Similarly, all defendants in this case appeared to enjoy the chaos of the January 6, 2021, with Coomer, weeks later, even posted his pride in participating in it and expressed an eagerness for "Civil War 2." Evans pleaded guilty to a violation of a Class A misdemeanor, 18 U.S.C. § 1752(a)(1).  Pursuant to 18 U.S.C. 3563(b)(10), Judge Friedrich sentenced Evans to 20 days' intermittent confinement as a condition to 36 months' probation.

In *United States v. Devin Rossman*, 22-CR-00280 (BAH), the defendant remained inside the Capitol building for approximately 1 hour and 53 minutes, traveled through restricted areas and bragged to friends in Facebook messages about entering the Speaker's Office suite.  Although Coomer did not access restrictive areas, his actions are similar and social media messages are more

18

problematic.  Like the Defendants, Rossman pleaded guilty to violating § 5104()(2)(G).  Judge Howell sentenced Rossman to 32 days intermittent confinement as a condition of 36 months' probation.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge."  *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012).  The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender."  *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).  "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes."  *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4]  Generally, restitution under the VWPA must "be tied to the loss

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," and any offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify

a specific victim who is "directly and proximately harmed as a result of" the offense of conviction,

18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering

from bodily injury, 18 U.S.C. § 3663(b).  At the same time, the VWPA also authorizes a court to

impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement."

*See* 18 U.S.C. § 3663(a)(3).  *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here.  The parties agreed, as permitted

under 18 U.S.C. § 3663(a)(3), that Coomer must pay $500 in restitution, which reflects in part the

role Coomer played in the riot on January 6.[5]  Plea Agreement at ¶ 10.  As the plea agreement

reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in

damages, a figure based on loss estimates supplied by the Architect of the Capitol and other

governmental agencies as of July 2023. *Id.* (As noted above in footnote 1, the amount of damages

has since been updated by the Architect of the Capitol, USCP, and MPD.)  Defendants' restitution

payment must be made to the Clerk of the Court, who will forward the payment to the Architect

of the Capitol and other victim entities. *See* PSR ¶ 10.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors.  Balancing these

factors, the government recommends that this Court sentence Coomer to 30 days' incarceration,

60 hours of community service, and $500 in restitution and Defendants Joshua Abate and Dodge

Dale Hellonen to 21 days' incarceration, 60 hours of community service, and $500 in restitution.

Such a sentence protects the community, promotes respect for the law, and deters future crime by

---

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

imposing restrictions on each Defendants' liberty as a consequence of their behavior, while recognizing their acceptance of responsibility for their crimes.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Joseph Huynh*_____
JOSEPH H. HUYNH
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-270

## <u>CERTIFICATE OF SERVICE</u>

On this 1st day of September 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

 /s/ *Joseph Huynh*
Assistant United States Attorney
JOSEPH H. HUYNH
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-270
