IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DODGE DALE HELLONEN | No. 1:23-MJ-14-ZMF-3 |

**DEFENDANT'S SENTENCING MEMORANDUM**

The defendant, Dodge Dale Hellonen, by and through counsel, respectfully submits this sentencing memorandum in support of his request for a reasonable sentence. Mr. Hellonen maintains that this case warrants a non-incarceration sentence based on the many mitigating factors in this case, including his personal history and characteristics, the nature and circumstances of his offense, and the need to avoid unwarranted sentencing disparities. These factors suggest that a non-incarceration sentence is appropriate and will accomplish the statutory factors set forth in 18 U.S.C. § 3553(a).

**Statement of Relevant Facts**

Dodge Hellonen is a 24-year-old member of the United States Marine Corps (USMC) and was stationed at the base in Quantico, Virginia when he entered the Capitol Building on January 6, 2021. He arrived there shortly before a crowd forced its way into the building, and he regrets following that crowd inside. Although he did not damage property or injure others, Mr. Hellonen understands that he should not have entered the Capitol Building as he did that day. However, a review of his case reveals that his conduct does not merit an active sentence.

Mr. Hellonen was born in Commerce Township, Michigan, where he grew up with both of his parents and his younger brother, Davis. Prior to his birth, both of Mr. Hellonen's parents served in the United States Army. His father was drafted in 1972 and served in the infantry, while his mother

enlisted in the 1980s and worked in communications. Military service further ran in Mr. Hellonen's family, with his maternal grandfather serving as an Army cook in World War II and an uncle serving in the United States Navy. Although his mother remained working in the communications field after her military service, she left work to become a stay-at-home mother around the time Davis was born. She returned to the workforce after her sons were in high school, taking a job as an assistant to an accountant. His father went to college after completing his time with Army and has worked as a senior account manager for an auto supply company for as long as Mr. Hellonen can remember.

Mr. Hellonen grew up and attended school in a stable, middle-class neighborhood. Although he experimented a bit with drugs, as many teens do, (Pre-Sentence Report [PSR] ¶ 47), Mr. Hellonen never had a substance abuse problem, never exhibited behavioral problems, did well in school, and became friends with a small, tightknit group of friends. By high school, Mr. Hellonen participated in his school's marching band and swam for the swim team. He also started working at an early age. Beginning at 14 years old, Mr. Hellonen did "odd jobs" for his neighbors such as yardwork, mowing lawns, and shoveling snow. At 16 years old, he began working at a Subway sandwich shop, preparing food. Thereafter, he worked as a busboy at a Mexican restaurant in his town. When he could, Mr. Hellonen also worked at his uncle's business, helping to move computers and office equipment.

As he approached the end of high school, Mr. Hellonen received a call from a USMC recruiter. Being an industrious and hard worker, Mr. Hellonen believed the Marines would provide him a challenging experience and meaningful career while serving his country. Mr. Hellonen decided to enlist in the Marines after graduation and signed up before his senior year ended. On August 28, 2017, Mr. Hellonen went to boot camp at Paris Island, South Carolina, starting as an E-1 Private, and graduated in 13 weeks. After a short visit with his family over Thanksgiving 2017, Mr. Hellonen went to Marine Combat Training at Camp Geiger, in North Carolina, where he spent Christmas and

2

New Year's learning basic shooting, patrolling, and some medical training. After Marine Combat Training ended in February 2018, Mr. Hellonen was sent to Goodfellow Air Force Base in Texas where he was trained for his job as a Signals Intelligence Collector/Analyst. To qualify for this position, Mr. Hellonen had to take standardized tests and assessments. During his time there, he was named Student of the Month. After six months learning this job in Texas, Mr. Hellonen went to Corry Station, a naval base in Pensacola, Florida where he received cyberwarfare training. Mr. Hellonen's first assignment with the USMC was at the base in Quantico, Virginia, where he worked at the Marine Corps Information Operations Center as a Signals Intelligence Analyst.

Throughout his military career, Mr. Hellonen has volunteered in charitable activities with the community through the Single Marine Program, such as church events, working at an animal shelter, and assisting with a Junior ROTC program. Mr. Hellonen excelled in the USMC and quickly rose in the ranks. He was a Private until December 2018, when he was promoted to Private First Class. He became a Lance Corporal in November 2018, a Corporal in May 2020, and was meritoriously promoted to Sergeant in August 2021, after which he reenlisted to continue his service in September 2021. Mr. Hellonen earned awards and commendations including the Navy and Marine Corps Achievement Medal, Marine Corps Good Conduct Medal, Global War on Terrorism Service Medal, National Defense Service Medal, and Navy Meritorious Unit Commendation, among others.[1] He received consistently positive feedback by his superiors.[2] In addition to his work, Mr. Hellonen also advanced his education through the military, taking college courses through the University of Maryland Global Campus.[3] In February 2022, Mr. Hellonen moved to his new station at Camp

---

[1] *See* Exhibit 1, Hellonen Partial MCTFS Record at 2. This exhibit contains part of the MCTFS record, as the entire document was previously provided to the U.S. Probation Office.
[2] *See* Exhibit 2, Hellonen USMC Fitness Reports.
[3] *See* Exhibit 3, Hellonen Unofficial Transcript, University of Maryland Global Campus.

Lejeune in North Carolina. He was training to deploy with his unit and went to Survival, Evasion, Resistance, and Escape (SERE) school. His plan was to train as a Special Operations Capabilities Specialist, which would allow him to do signals intelligence while deployed.

On January 6, 2021, while stationed at Quantico, Mr. Hellonen traveled with two friends from his unit to Washington, D.C. and followed a crowd of people into the United States Capitol Building. Once inside, Mr. Hellonen and his companions walked around the building and went into the Rotunda. While there, they placed a hat on a statue. Mr. Hellonen carried a "Don't Tread on Me Flag." Although he was observed using his phone in the building, Mr. Hellonen did not post anything to social media. He remained in the building for 52 minutes and left without incident.

On January 18, 2023, Mr. Hellonen's plans for deployment were put on hold indefinitely when he was arrested for his January 6th activities in the Capitol Building. Mr. Hellonen was placed on conditions of pretrial release on January 26, 2023 and has been in compliance with those conditions. Since his arrest, the USMC initiated an investigation into Mr. Hellonen, and he received separation paperwork in July 2023.  Because of this investigation, he also had his duties changed. Rather than working as a signals analyst, Mr. Hellonen was given such assignments as inventorying military gear. Those who work with him have noted his positive attitude and demonstrated willingness to excel in any task he is assigned, despite this drastic change to his duties.[4] All of the character letters submitted on his behalf by his current and former military colleagues describe Mr. Hellonen as a person whose conduct in this case is out of character with the military professional they know him to be.[5] His family also wrote in support, noting his positive history and their support for him.[6]

---

[4] *See* Exhibit 4, Character Letters by Cole Chamberlain, Andriy M. Khmil, Corinne Filipelli, and Reese L. Lemane
[5] *Id*.
[6] *See* Ex. 4, Character Letter by Dale and Shelby Hellonen.

Mr. Hellonen does not downplay the significance of what took place in the U.S. Capitol Building on January 6, 2021. He understands that, in addition to the extensive and costly property damage the building sustained, people were hurt. From the legislators who were made to hide from the mob to those who lost their lives, Mr. Hellonen knows what happened that day was serious and costly, and that merely being part of such a crowd emboldens some of its members to engage in dangerous behaviors. Although he did not destroy property or injure others, Mr. Hellonen knows he should not have entered the Capitol Building, and he regrets any contribution his presence there may have had on others' decisions to engage in damaging conduct. Today, Mr. Hellonen understands he will be separated from the USMC. As such, he sees the effect his decision to enter the Capitol Building has had on his future. He hopes for the opportunity to remain out of custody so that he can focus on challenging the classification of his discharge (he hopes for an Honorable, rather than Other-Than-Honorable Discharge) and obtaining future employment in the communications field.

**Argument**

According to 18 U.S.C. § 3553(a), a sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in the statute and must consider several factors in determining the sentence imposed. Among those factors are the history and characteristics of the defendant, the nature and circumstances of the offense, the need to afford deterrence and protect the public, and the need to avoid unwarranted sentencing disparities. Mr. Hellonen maintains that the § 3553(a) factors, when applied to his case, weigh in favor of a non-incarceration sentence.

1. **Mr. Hellonen's history and characteristics support a non-incarceration sentence as he is at low risk of recidivism, has accepted responsibility for his conduct, and has been deterred from future criminal conduct.**

Mr. Hellonen was raised in a middle-class home in Michigan. He had a good childhood and grew up in a loving family. During his youth Mr. Hellonen was involved in positive school activities, had a close group of friends, and started working at 14 years old. Mr. Hellonen enlisted in the USMC upon graduating high school. While he experimented with drugs a few times as a young teen, Mr. Hellonen has no substance abuse problems, and until his arrest for this case, his criminal record consisted of nothing but a minor traffic infraction from 2018 (PSR ¶¶ 27-33).

One of the many factors favoring a non-incarceration sentence in this case are the lack of criminal history and the low statistical probability of recidivism for individuals such as Dodge Hellonen. Other than his minor traffic infraction, Mr. Hellonen has no significant criminal history. According to empirical research by the U.S. Sentencing Commission, individuals like Mr. Hellonen, with no prior convictions or arrests, have the lowest rate of recidivism.[7] More importantly, there is no indication that Mr. Hellonen engaged in any similar conduct prior to his entering the Capitol Building on January 6, 2021. Mr. Hellonen's background also predicts a lower rate of recidivism

---

[7] *See U.S. Sentencing Commission, Recidivism and the "First Offender,"* at 14 (May 2004), found at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf. (last visited Jan.11, 2023) This study found the lowest rate of recidivism at 6.8% for defendants with no prior arrests nor criminal history, compared at 8.8% for those with prior convictions that do not count toward criminal history points.

compared to others in his position given his level of education,[8] positive employment history,[9] and lack of substance abuse.[10] His low risk of recidivism supports a non-incarceration sentence.

Another factor favoring a non-incarceration sentence in this case is Mr. Hellonen's acceptance of responsibility for his conduct. On June 12, 2023, Mr. Hellonen pled guilty to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). In doing so, Mr. Hellonen saved both the United States and this Court the time and resources that would have been spent on a trial. Mr. Hellonen understands that, although he caused no direct property damage or injuries to others, his very presence in the crowd contributed to what took place in the Capitol Building that day. Accordingly, as part of his plea agreement, Mr. Hellonen agreed to pay restitution in this case. Mr. Hellonen further demonstrated his acceptance of responsibility by complying with conditions of release set by this Court. His good conduct while on release demonstrates Mr. Hellonen's respect for court orders and his ability to comply with release conditions. This compliance predicts continued good behavior should he be given a non-incarceration sentence with supervision.

Finally, the collateral consequences of Mr. Hellonen's conduct in this case provide added punishment and deterrence that obviate the need for an active sentence. Having pled guilty in this case, Mr. Hellonen will now have a misdemeanor conviction on his once clean criminal record. Moreover, given the high-profile nature of the offense conduct and his position as an active member of the USMC, Mr. Hellonen's case has been covered by the media and is easily found with an internet

---

[8] Offenders with some college education (18%) are less likely to recidivate than those who have just a high school education (19.3%), or those with less than a high school education (31.4%). *Id*. at 12. *See* U.S. Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, May 2004 at 12, http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (last visited Jan. 11, 2023)

[9] "Offenders with stable employment in the year prior to their instant offense are less likely to recidivate (19.6%) than are those who are unemployed (32.4%)." *Id*.

[10] "Overall, offenders using illicit drugs within one year prior to their instant offense have a higher recidivism rate (31.0%) than those not using illicit drugs (17.4%)." *Id*. at 13.

search of his name, which further heightens the stigma of his conviction.[11] More importantly, this conduct has led the USMC to initiate separation proceedings against Mr. Hellonen. He understands that his conduct on January 6, 2021 has directly jeopardized his military career and, depending on the classification of his discharge, his future employment prospects. The many collateral consequences of his conduct and conviction therefore provide additional punishment, promote respect for the law, and serve as a deterrent to both Mr. Hellonen and the public.

2. **The nature and circumstances of Mr. Hellonen's offense further support a non-incarceration sentence considering the spectrum of conduct that occurred on January 6, 2021.**

The events of January 6, 2021 represent a shocking time for our nation. Angered by the outcome of the 2020 election and encouraged by the outgoing U.S. President to "walk down to the Capitol" and "show strength," a crowd descended upon the U.S. Capitol Building.[12] This crowd pushed past police barricades, forced their way into the building, and delayed Congress from counting electoral votes.[13] Several individuals died that day, including protesters such as Ashli Babbitt (fatally shot while trying to enter the House chamber), Kevin Greeson (heart attack), Rosanne Boyland (reportedly crushed in a stampede), and Benjamin Philips (stroke).[14] One Capitol Police Officer died of a stroke the next day and four others committed suicide.[15] Moreover, the building suffered extensive damage

---

[11] *See* Google.com search for "Dodge Hellonen," found at
https://www.google.com/search?q=dodge+hellonen&rlz=1C1RXQR_enUS1004US1004&oq=dodge+hellonen&aqs=chrome.0.69i59j0i433i512j0i457i512j0i402i650j0i433i512j0i131i433i512j0i433i512j0i131i433i512l2j0i512.1908j0j4&sourceid=chrome&ie=UTF-8 (last visited August 21, 2023). The search results include articles in the Charlotte Observer (https://www.charlotteobserver.com/news/local/crime/article276351246.html), CBS News (https://www.cbsnews.com/news/two-active-duty-marines-plead-guilty-jan-6-capitol-riot-charges/), the Associated Press (https://www.cbsnews.com/news/two-active-duty-marines-plead-guilty-jan-6-capitol-riot-charges/), and others.
[12] *See* Poynter.org article, "A timeline of what Donald Trump said before the Capitol riot," found at https://www.poynter.org/fact-checking/2021/a-timeline-of-what-donald-trump-said-before-the-capitol-riot/ (last visited August 21, 2023).
[13] *Id.* (Poynter article)
[14] *See* NY Times article, "These Are the People Who Died in Connection With the Capitol Riot," found at https://www.nytimes.com/2022/01/05/us/politics/jan-6-capitol-deaths.html (last visited August 21, 2023).
[15] *Id.*

from rioters who broke doors and windows to enter the building. Some of the more egregious acts of property damage included smearing blood on the bust of U.S. President Zachary Taylor[16] and rioters' urinating and defecating in the building.[17] It was reported, "During the riot, Capitol employees raced to save the building's artwork and furnishings, opening vents to let out chemical fumes and saving items like the roughly 203-year-old silver inkstand present at most House sessions, likely the oldest artifact in the House chambers."[18] Several items in the Capitol Building were also stolen or removed that day.[19] All told, the U.S. Justice Department has estimated the total losses suffered from this event at $2,881,360.20.[20]

On January 6, 2021, Mr. Hellonen and two of his colleagues from the USMC went to Washington, D.C. They did not attend President Trump's rally, having arrived in the city approximately 45 minutes before the crowd entered the Capitol Building. Mr. Hellonen and his friends saw the crowd approach the building, and by the time they reached it, people had already broken in. Mr. Hellonen acknowledges that he followed the crowd into the building and spent nearly an hour inside. He was observed carrying a flag and using his phone. During the 52 minutes Mr. Hellonen was in the Capitol Building, he and his friends placed a hat on a statue and took photographs of it. He recalls they were in the Rotunda for about 30 minutes and in the building for 52 minutes.

---

[16] *See* NBC.com article, "Capitol reels from damage and destruction left by violent rioters," found at https://www.nbcnews.com/politics/congress/capitol-reels-damage-destruction-left-violent-rioters-n1253383 (last visited August 21, 2023).

[17] *See* New York Post article, " Rioters left feces, urine in hallways and offices during mobbing of US Capitol," found at https://nypost.com/2021/01/08/rioters-left-feces-urine-in-hallways-and-offices-during-mobbing-of-us-capitol/ (last visited August 21, 2023).

[18] *See* Forbes.com article, "Capitol Riot Costs Go Up: Government Estimates $2.73 Million In Property Damage," https://www.forbes.com/sites/zacharysmith/2022/04/08/capitol-riot-costs-go-up-government-estimates-273-million-in-property-damage/?sh=10c5e13119c5 (last visited August 21, 2023).

[19] *See* Forbes article, " Clyburn's Ipad, Laptop From Pelosi's Office: Items Stolen, Destroyed In Capitol Attack," https://www.forbes.com/sites/jackbrewster/2021/01/08/clyburns-ipad-laptop-from-pelosis-office-items-stolen-destroyed-in-capitol-attack/?sh=474942295963 (last visited August 21, 2023).

[20] *See* U.S. Department of Justice Report, "31 Months Since the Jan. 6 Attack on the Capitol," found at https://www.justice.gov/usao-dc/31-months-jan-6-attack-capitol (last visited Aug. 21, 2023).

While Mr. Hellonen knows he should not have been in the building that day, his conduct while in the building sits in stark contrast to the more damaging acts that took place by others in the crowd. Mr. Hellonen did not break his way into the building; he did not steal, deface, or damage property; and he did not have any altercations with others, including law enforcement officers. In short, Mr. Hellonen caused no direct damage or injuries. Moreover, unlike many who publicized the videos and photos they took while in the building,[21] Mr. Hellonen did not share anything on social media either before or after his time in the Capitol Building. When viewing the events of January 6, 2021, there is clearly a spectrum that ranged from dangerous and violent to more benign forms of conduct. Mr. Hellonen's behavior falls on the less egregious end of this spectrum, which further supports a non-incarceration sentence in his case.

3. **A non-incarceration sentence is warranted in this case to avoid creating a sentencing disparity among defendants similarly situated to Mr. Hellonen.**

District court judges are directed by 18 U.S.C. § 3553(a)(6) to be mindful of "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." As noted above, along the spectrum of January 6th cases, some of which involved defacing historical artifacts and assaulting law enforcement officers, Mr. Hellonen's is on the less egregious end. His entry into the Capitol Building was not preplanned, and he did not enter the Capitol by scaling up the side of the building or by breaking in windows or doors, but by following behind a larger crowd. While Mr. Hellonen was using his cellular phone inside the Capitol, he did not post anything on social media during or after his entry into the Capitol Building. Mr.

---

[21] *See* e.g., The Guardian article, "Judges weigh social media posts in criminal sentences for US Capitol attack," found at https://www.theguardian.com/us-news/2021/dec/13/judges-weigh-social-media-posts-criminal-sentences-us-capitol-attack (last visited August 21, 2023).

Hellonen submits that the 40 U.S.C. § 5104(e)(2)(G) cases discussed below represent appropriate comparable case facts which resulted in no active prison time:

*United States v. Jordan Kenneth Stotts*, 21-CR-272-TJK (D.D.C.)

Jordan Stotts pleaded guilty to parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). Mr. Stotts entered the Capitol around 2:45 p.m. Statement of Offense, 3 [DE- 20]. Mr. Stotts walked to the Capitol Rotunda and stayed inside the Capitol Building for around one hour, taking videos with his cellphone. *Id.* at 4. On November 9, 2021, Mr. Stotts was sentenced to 24 months' probation. Judgment as to Jordan Kenneth Stotts [DE- 34].

*United States v. Caleb Jones*, 21-CR-321-JEB (D.D.C.)

Caleb Jones pleaded guilty to parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Plea Agreement [DE-18]. Mr. Jones entered the Capitol around 2:20 p.m. Statement of Offense, 3 [DE-19]. Mr. Jones walked down numerous hallways. *Id.* While Mr. Jones was talking pictures and videos while inside the building, he did not post any to social media. Gov't Sentencing Memo., 11 [DE- 23]. On December 1, 2021, Mr. Jones was sentenced to 24 months' probation with 2 months' home confinement. Judgment as to Caleb Jones [DE- 28].

*United States v. Valerie Ehrke*, 21-CR-97-PLF (D.D.C.)

Valerie Ehrke pleaded guilty to parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Plea Agreement [DE- 14]. Ms. Ehrke did not plan to enter the Capitol Building on January 6th. Statement of Offense, 4-5 [DE- 15]. After listening to President Trump's speech, Ms. Ehrke entered the Capitol around 2:09 p.m., taking videos while walking through the building. *Id.* at 3. On September 17, 2021, Ms. Ehrke was sentenced to 36 months' probation and 120 hours of community service. Judgment as to Valerie Elaine Ehrke [DE- 26].

By contrast, Mr. Hellonen further submits the 40 U.S.C. § 5104(e)(2)(G) cases discussed below as distinguishable cases, which resulted in an active prison sentence:

*United States v. Devin Rossman,* 22-CR-280-BAH (D.D.C.)

Devin Rossman pleaded guilty to parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Plea Agreement [DE-21]. Unlike Mr. Hellonen, Mr. Rossman discussed plans to bring firearms and knives to D.C. before going on January 6, 2021. Statement of Offense, 3 [DE- 22]. Mr. Rossman entered the Capitol Building around 2:19 p.m. and stayed inside the Capitol Building for nearly two hours. *Id.* at 4. While inside the Capitol Building, Mr. Rossman took pictures and sent them to various people through Facebook. *Id.* On December 9, 2022, Mr. Rossman was sentenced to 32 days of intermittent confinement in addition to 36 months' probation. Judgment as to Devin Rossman [DE- 37].

*United States v. Derek Sulenta,* 22-CR-340-TSC (D.D.C.)

Derek Sulenta pleaded guilty to parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Plea Agreement [DE-16]. Unlike Mr. Hellonen, Mr. Rossman posted on December 23, 2020, "I'll be there Jan 6th to support the president no matter what happens." Statement of Offense, 3 [DE- 15]. Mr. Sulenta entered the Capitol Building around 2:26 p.m. *Id.* At 4. While in the Capitol Building, Mr. Sulenta posted on Facebook saying, "Dude we breached the capital building," and "Inside the capital building. This is wild!" *Id.* On February 22, 2023, Mr. Sulenta was sentenced to 14 days' imprisonment and 60 hours of community service. Amended Judgment as to Derek Sulenta [DE- 26].

While Mr. Hellonen should not have entered the Capitol Building on January 6, 2021, his conduct was not an egregious example of what took place that day. Mr. Hellonen did not plan to enter the Capitol Building, he did not enter the Capitol Building by breaking through windows or breaking

down doors, and he did not post on social media before or after being in the Capitol Building. Mr. Hellonen's conduct was more along the lines of what those who received non-incarceration sentences did rather than of those who received active sentences. Accordingly, a non-incarceration sentence is appropriate for Mr. Hellonen, and it would avoid unwarranted sentencing disparities among 40 U.S.C. § 5104(e)(2)(G) defendants.

## Conclusion

Dodge Hellonen is asking this Honorable Court to impose a non-incarceration sentence for his offense on January 6, 2021. Mr. Hellonen understands the seriousness of the events that transpired in the Capitol Building and regrets having been with a group that caused the damage and destruction that day. That said, Mr. Hellonen's actions while in the Capitol Building and thereafter demonstrate his behavior was on the less egregious end of the spectrum of the conduct that took place that day. Mr. Hellonen pled guilty pursuant to a plea agreement with the government, has accepted responsibility for his conduct, and is experiencing the collateral consequences of committing this offense as he faces separation from the USMC. In short, Mr. Hellonen has been deterred from this sort of conduct and does not require an active sentence to meet the goals of sentencing in this case.

This Court has the opportunity to recognize Mr. Hellonen's excellent military service, acknowledge his low risk of recidivism, and impose a sentence that avoids unwarranted sentencing disparities. Therefore, Dodge Hellonen respectfully requests this Honorable Court impose a non-incarceration sentence.

Respectfully requested this 4th day of September, 2023.

G. ALAN DUBOIS
Federal Public Defender

*/s/ Halerie M. Costello*
HALERIE M. COSTELLO

13

          Assistant Federal Public Defender
          Attorney for Defendant
          Office of the Federal Public Defender
          150 Fayetteville Street, Suite 450
          Raleigh, North Carolina 27601
          Telephone: 919-856-4236
          Fax: 919-856-4477
          E-mail: halerie_costello@fd.org
          N.C. State Bar No. 43030
          LR 57.1 Counsel Appointed

          VIDALIA V. PATTERSON
          Attorney
          N.C. State Bar No. 28017

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

JOSEPH H. HUYNH
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-2708

by electronically filing the foregoing with the Clerk of Court on August 4, 2023, using the CM/ECF system which will send notification of such filing to the above.

This the 4th day of August 2023.

          */s/ Halerie M. Costello*
          HALERIE M. COSTELLO
          Assistant Federal Public Defender
          Attorney for Defendant
          Office of the Federal Public Defender
          150 Fayetteville Street, Suite 450
          Raleigh, North Carolina 27601
          Telephone: 919-856-4236
          Fax: 919-856-4477
          E-mail: halerie_costello@fd.org
          N.C. State Bar No. 43030
          LR 57.1 Counsel, Appointed